And you'll have to tell me how you pronounce your last name. Your Honor, my last name is pronounced Chepanis. Chepanis, Mr. Chepanis. The plaintiff is Parungao, Dr. Parungao. May it please the Court, I represent Dr. Parungao. And although this case has a lot of different facets, sometimes it seems to be going in every direction, there is one common theme, common thread that runs through the case that I believe is dispositive on every issue. And that is the issue of privity. Unless there's privity, there can't be a secondary filing, there can't be a res judicata from the defense. And I think that's the most important aspect of this. Now, in order to establish privity, or in order to find it, the district court took judicial notice of disputed facts and then reached its findings, and it construed all of these facts in a way most favorable to defendants. Is there any question, though, that Mr. Piper, Dr. Piper, the chief of the medical staff, was responding on behalf of the hospital and the staff? I know there were allegations in what we're calling Parungao 3 that these were false responses, but it's not like he was, you know, in some frolicking detour of his own writing letters. He received requests from other hospitals to verify the credentials, and he responded. Your Honor, remarkably, that's exactly the problem here. Our information is that he did go out on his own. And that's why after he sent these letters to third parties, we learned through Galesburg Cottage Hospital that he did not have the authority to send these letters. But didn't he have at least a parent authority? He did send the letters on Galesburg Cottage Hospital letter. So that's one point. But it was revealed afterwards that he was not acting on behalf of the hospital. Indeed, he, Dr. Piper, cited the wrong or different hospital policy, and he tendered these letters to different health care entities. And he admitted in his subsequent letter that he did not have the authority to send them. He's not the proper party to send them, not just the parent authority, but it is not his function. Now, why are the other hospitals who receive these letters supposed to know that? I mean, you get a letter, it's on the right letterhead, it's from a person who's affiliated with the hospital, as Dr. Piper certainly is. How can they know that? And how did all this get into the record? I mean, this is a funny record with all this stuff. Oh, yes. It's the Medical Practice Act and the Hospital Licensing Act. It requires that peer review investigation, unless it has an adverse finding at the end, just the mere fact of an investigation can't be disclosed as a criminal offense. Why are we as a federal court bound by all of that? The Medical Practice Act? Yeah. It's a non-waivable privilege from my end. These are state law claims, and the privileges associated, it's a different privilege here. It's not a discovery privilege. It's a privilege to, for example, a privilege to detain in a peer review proceeding. Because it's so secret and nothing can be revealed about it unless there's an adverse finding, there are privileges and immunities built in pursuant to both the Hospital Licensing Act and the Medical Practice Act. In order to get there, though, you first- And we're told that he's a citizen of Missouri at this point, which is why diversity existed? Yes. He had to move away because of this. He had to travel very far to find a new job. He could not get his privileges verified. And that's one of the issues here. We've got Dr. Piper who actually responded. We don't know why he said what he said. We have no idea. But he did respond. The hospital, their actions took place after we attempted to file the initial complaint. After Dr. Piper went away and said, this isn't my responsibility and didn't contest the falsity of this in the Piper complaint, or in his response- Which complaint are you talking about? The Piper- The one in the federal court? No. The Piper complaint was the one that was filed- That's what we're calling 3, right? Yes. I believe that's what some have referred to as 3. That complaint was brought well after the first one was attempted to be filed. There's nothing in that complaint at all that references peer review, that references privity, that references any association with the hospital. Although the Illinois Circuit Court dismisses that case for failure to state a claim and is affirmed by the Illinois Appellate Court. On different grounds, the Appellate Court determined that there were certain privileges and immunities. It didn't decide on that particular part. That doesn't matter for preclusion law. It's a final judgment on the merits. It is. This does come down to privity, as you opened your argument with. But you pleaded yourself out of court on the privity question because your first suit alleged that the hospital was liable vicariously for the actions of its chief of staff, who is Piper. So that brings you squarely within the double-filing rule. The problem is, Your Honor, that this case doesn't have anything to do with those letters. This case doesn't mention them at all. It's all the same sort of course of conduct. It's the same operative, factual basis. Your Honor, I would submit that we don't know that. We don't know why. This is the classic case of claim splitting. And without even getting to the preclusion issue, just treating it as the single refiling rule issue, which in theory overlaps with preclusion doctrine, you've tried four times to relitigate the same core of operative facts. Your Honor, we could, with the Piper letter, there was no connection with any peer review at all. We did not sue based on anything like that. It was just a simple defamation claim because word got out, and it was false. That's all it was. Right, but it's the same core of operative facts, so you've got to bring every claim that you've got in a single lawsuit. And Illinois law permits you a second refiling, but not more. The issue here, though, is that we did not plead anything to do with the Piper case. There's no privity shown between Piper and the hospital. You alleged it. It was not filed, Your Honor, and they subsequently disclaimed privity in the e-mails that were attached to our motions. You alleged it in your first complaint. The hospital was vicariously liable for the actions of its chief of staff. And we believed that the hospital did participate at that time. Your Honor, we believed that the hospital did participate in having that letter sent. Then we got word from the hospital that they did not. They affirmatively stated, and that's attached to our response to the motion to dismiss, they affirmatively told us that Piper was on his own. He wasn't acting on behalf of the hospital. He wasn't even citing the right policy. And the actions against the hospital defendants here, those all took place afterwards. At the time we tried to file our initial complaint, those facts hadn't even come to fruition yet. And that gets me to the overall problem, is that the connection is based on an overall desire to respect the integrity of the peer review process. That was how the court connected the two. There was no, we don't even know that there was a peer review process. If there was, we certainly know based on the facts that there was no effort to protect the integrity of it. And because of that, the privity, the way we pled it, and we have to do this based on our complaint. There is no allegation of privity, and there are no facts beyond that. I believe I'm out of time. All right, if you'd like to save a minute, that's fine. All right. Mr. Arnold. Good morning. Thank you, Your Honor, and may it please the court. The issue this morning is how many bites of the apple does Parengeo get. Under Illinois' secondary filing rule, he gets two bites. He's had them. Under res judicata, he gets one bite. He's had that too. Now, let's start with the secondary filing rule. If you have the same claim, you only get to refile it once, not twice. And that does not require privity. Well, in Illinois, as I understand it, at least for purposes of the concept of same claim for the refiling rule, uses the same concept that it does for claim preclusion, for example, which is the transactional rule Judge Sykes was talking about. That's absolutely right. And the Illinois Supreme Court uses a transactional analysis. Is it the same transaction or occurrence or series thereof? And as Judge Sykes pointed out, it is quite clear that in all four of these complaints, it is the same core of operative facts, his termination of employment with the clinic, his disassociation with the hospital, his claim of misrepresentation or refusal to respond to prospective employers. That's all one set of operative facts. I emphasize again, you held in both Evans and Muhammad, that you don't have to have a defendant to be party in the prior lawsuit in order for the secondary filing rule to apply. And the reason for that is if you want to sue over the same claim, you need to sue all the defendants at the same time. But they do have to be related. I'm sorry? They do have to be sufficiently. I mean, we use the word privity as kind of a shorthand for all of that. They need to be closely enough related. If there were truly somebody who was a stranger to the first suit. That is covered by the transactional and occurrence test, which I think is plainly satisfied here. Now, it doesn't matter whether it's state or federal court. I thought that certainly the transaction is something. But are you saying that if you bring a lawsuit under Parties 1, 2, and 3 about a transaction and you didn't sue Party 4 who was not in privity, who was maybe a supplier or somebody else, a newspaper reporter, I don't know, surely you can bring a later lawsuit against somebody who's a stranger. You can bring one. That may not be this case. You can bring one, Your Honor. Okay? But here we have two. And that's what's banned. And in both Evans and Muhammad, you said it didn't matter if the defendant in the second refiling was or was not a party to the first. But Evans has been criticized by some of the Illinois courts, has it not? In fact, some Illinois courts say that privity is not enough. Well, privity is, of course, essential for race judicata. But I don't think it's ever been. I've never seen an Illinois case that says it's necessary for the second refiling. Now, obviously, I think there is privity here based on the joint interest that all of the defendants had in defending against the wild allegations that Parengeo did. You know, the hospital, the clinic, the medical staff, Dr. Piper, my client, they all had an interest in defending against these allegations. But you seem to be making a very broad argument, which I don't think is supported by Illinois law, that there is simply no privity requirement at all, or no requirement that the defendants in all three suits be whatever the same means. And I think Judge Ripple was alluding to the fact that we actually have different rulings from the appellate court of Illinois. Some say the defendants seem to be literally the same. The first district seems to say no, or sorry, the fifth district seems to say no, that privity is enough. And so Illinois seems to think that for this refiling rule, you've got to have whatever the same defendants means, exactly the same or in privity. So if you say there's no privity rule at all, that would surprise me. I have not, well, two answers. Number one, for the reasons I have indicated, I believe there clearly is privity here. Number two, Perringale has never made that argument, Your Honor. And with all respect, I do not believe the court should be advocating on his behalf. I think he's waived it. In fact, the only thing he had to say about the second refiling rule was that Perringale 1 wasn't filed, because, you know, the order allowing John Doe to refer to it. I'm sorry that we just don't want to fool around with this single filing rule in Illinois. That's just, it's a quagmire. We don't want to get involved. Tell me why you went on res judicata. Well, first, because it's the same transactional recurrence, as I've indicated. All of his claims in all four of these complaints arise out of termination of employment, departure from the hospital, efforts to obtain a new job, and the responses or lack thereof by the hospital to prospective employers. That is the same transaction. And, again, he never argued, either to the district court or in his opening brief, that it wasn't the same transaction. So it seems to me that with respect to the same transaction issue, that has pretty clearly, thoroughly been waived. And it is the same transaction. Now, as to privity. So the defendants, I mean, if we were thinking of res judicata, you can reach all the way back to Perungo 1. And it's basically the same defendants now. Now we have the hospital back in, the affiliates, all the same actors. Yes. Now, the final judgment, of course, was Perungo 3, where Dr. Piper was the only defendant. But for obvious reasons, the hospital had the same interest in defending those claims as Dr. Piper did. Well, there's a voluntary dismissal, right? I'm sorry? There's no adjudication on the merits in Perungo 1 because of the voluntary dismissal. No. And we've never suggested otherwise. Perungo 3 is the final judgment. And it is conceded, I believe, by Perungo that Perungo 3 is a final judgment for purposes of res judicata. So we've got a final judgment. We've admittedly got the same transaction or occurrence. We have privity for all of the reasons that I have previously indicated, plus one more. There is an allegation here that all of the defendants conspired with each other to do damage to Dr. Perungo. By definition, parties who are allegedly co-conspirators are in privity with each other. So it is the joint interest in defending. It is the association between the hospital and, you know, the medical staff that provides that joint interest. It's no different than the managing partner of the law firm who wasn't joined to the first lawsuit but was obviously in privity with his law partners. It's no different than the associate in the doctor's office who was not sued in the first lawsuit but obviously was in privity because they had a joint interest in defending the claim. So you combine the joint interest in defending the claim with the allegation of conspiracy. I think it is very clear that there is privity here. Judge Ripple, I kind of like the second refiling rule, but if you prefer to take this one on race judicata, I'll take that either way. If the court has any other questions, I'd be glad to answer them. Apparently not. Thank you very much. Thank you very much. Anything further? Mr. Chapin. Yes, Your Honor. Your Honor, counsel's argument with respect to conspiracy creating privity, fine. It still doesn't create privity between Dr. Piper and the hospital. Now as we cited in our brief, the issue of privity between a medical staff and a hospital is absolutely a fact question. It should not be decided on a 12B6 motion where the affirmative defense is raised. It's so rare for the court to grant these motions because the allegation would have to be in the Piper complaint that he was in privity with, somehow, with the hospital. Everyone admitted after we tried to file the first complaint that they were not in privity together. I mean, the hospital never tried to intervene in the Piper case, and if their interests were at stake, one would think they would have done that. But when Piper acted on his own, as he said he did, that just became a defamation claim. There's no contract with Piper. Our complaint had nothing to do with Dr. Perongo's employment because Dr. Piper couldn't affect it. It had nothing to do with peer review because Dr. Piper wasn't involved in it. All we know is that Dr. Piper wrote a letter. And in order to draw the privity, we have to assume that these are connected. Now, the Piper letters are not referenced in the complaint. We let that go, and I was careful not to touch the Piper letters in this complaint. But the hospital defendants cannot continue afterwards to do something different but still damaging. All right. So thank you very much. Thanks to both counsel. We'll take the case under advisement.